UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DONTRELL LEFLORE,

 Petitioner,

v.              Case No. 04-C-0567

BYRAN BARTOW,

 Respondent.

---

**DECISION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS**

---

### I. PROCEDURAL BACKGROUND

This action was commenced on June 14, 2004, when the petitioner, Dontrell Leflore ("Leflore"), filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Leflore's conviction became final within the meaning of 28 U.S.C. § 2244(d)(1) on September 10, 2003, to wit, ninety days after the Wisconsin Supreme Court denied his petition for review. On June 14, 2004, and thus in timely fashion, Leflore filed his federal habeas petition in which he asserted three claims: (1) that he was denied his right to an impartial jury; (2) that he was denied effective assistance of counsel due to trial counsel's not removing an alleged bias juror; and (3) that the trial court abused its discretion when sentencing him.

On June 18, 2004, this court issued an order after Rule 4 review, under the terms of which order the respondent was to file his answer on or before August 16, 2004; the petitioner was to file his brief on or before September 15, 2004; the respondent was to file his brief on or before November 1, 2004; and, the petitioner was to file his reply brief on or before December 1, 2004.

On August 2, 2004, the respondent filed his answer. After a number of extensions of time were granted to the petitioner, on December 4, 2004, Leflore filed his brief. Similarly, after an extension of time was granted to the respondent, the respondent filed his brief on April 29, 2005. On May 13, 2005, the petitioner requested a forty-five day extension of time to file his reply brief and, on May 13, 2005, this court granted him such extension, thereby requiring that his reply brief be filed on or before June 30, 2005.

On June 13, 2005, Leflore filed a submission in which he sought to have further action by this court on his habeas corpus petition stayed until such time as he and his "Jailhouse Lawyer," one Edward Leon Jackson, decided whether Leflore should return to the state court to exhaust certain claims. Because Leflore did not set forth in his motion precisely what claims (or issues) he wanted to consider taking back to state court and because he did not indicate how much time for which he wanted the stay to be entered, on June 24, 2005, this court denied his motion without prejudice; at the same time the court granted him an extension of time to file his reply brief.

Thereafter, on July 25, 2005, Leflore filed a motion seeking reconsideration of the court's order of June 24, 2005. In his motion, Leflore set forth the claims which he sought to present to the state court by way of a postconviction motion under Wis. Stat. § 974.06. In order to assist the court in deciding Leflore's motion seeking reconsideration, the respondent was ordered to file a response to Leflore's motion setting forth the respondent's position (and support therefor) with respect to the petitioner's motion. On August 9, 2005, the respondent filed his response, in which he set forth his reasons for opposing the petitioner's motion. After giving the matter due consideration and for the reasons set forth in an order issued on August 12, 2005, Leflore's motion to reconsider was denied.

2

Leflore was ordered to file his reply brief on or before September 1, 2005. However, on September 6, 2005, Leflore filed a motion for an extension of time to file his reply brief. On September 7, 2005, this court granted Leflore's motion, at least in part. Specifically, LeFlore was ordered to file his reply brief on or before November 1, 2005. Leflore filed his reply brief on November 4, 2005. In light of the foregoing, the claims set forth in Leflore's petition for a writ of habeas corpus are now fully briefed and are ready for resolution.

## II. FACTUAL BACKGROUND

In its decision affirming Leflore's conviction, the Wisconsin Court of Appeals recited the following facts which gave rise to the criminal charges against Leflore.

> This case began with a car chase, which started shortly before 6:00 p.m. on September 25, 2000. At that time, two City of Milwaukee police officers saw Dontrell A. Leflore driving a blue Chevrolet Impala. He was driving fast. When Leflore did not stop at a stop sign, the officers tried to pull him over. Leflore did not stop for the officers.
>
> The officers chased Leflore with their squad car. Leflore, however, continued to flee, driving at least fifty miles per hour at times and through several stop signs. When Leflore drove through a stop sign at the intersection of Buffum and Burleigh Streets, he hit Diane Harvey's car. Harvey was severely injured and later died. Her daughter, who was also in Harvey's car, was injured. Leflore then got out of his car and ran away. The officers captured him after a short chase on foot.

(Answer, Ex. E at ¶¶ 2-3.)

After the jury returned a guilty verdict, Leflore was convicted of first-degree reckless homicide, first-degree reckless endangering safety, and two crimes related to his attempts to elude police when they tried to stop him for failing to stop at a stop sign. The circuit court sentenced him to an aggregate sentence of ninety-three years, sixty-four years of initial confinement followed by twenty-nine years of extended supervision. (Answer, Ex. A.)

3

During the course of jury selection, the trial court asked the prospective jurors whether any of them had been the victim of an "injury accident." One of the prospective jurors, Juror number 3, told the court that a "couple of guys" had attacked him on a city bus about five years earlier. During follow-up questioning, that juror indicated that the incident occurred about ten years earlier. The trial court thereafter asked the juror questions in response to which the juror said that he reported the incident to the police, that the complaint found its way to the District Attorney's Office, that the incident went to court, but that the juror did not have to testify. When the trial court asked juror number 3 if he thought the incident would make him biased one way or another in the case, the juror responded: "It's hard to say. I don't know whether it would or not. I suppose I couldn't say until--." The trial court then told juror number 3: "Okay. I'm sure the lawyers will follow up. That's it for now. Thank you, sir." (Answer, Ex. E at ¶ 4.)

When LeFlore's trial counsel questioned the prospective jurors, the following exchange took place between him and juror number 3 regarding the bus incident.

> [DEFENSE COUNSEL]: [Juror number three], you testified that you were attacked by a couple of guys on a bus. What did these guys look like?
>
> JUROR 3: Well, at the time they were a couple years older than me. They were black. They - - Other than that, I suppose, you know, pretty nondescript.
>
> [DEFENSE COUNSEL]: How did that make you feel when you were attacked?
>
> JUROR 3: Well, I was intimidated by them and I guess I felt vulnerable, scared. I don't know, the way most people I suppose would feel in that situation.
>
> [DEFENSE COUNSEL]: Have you changed the way you do things because of this incident?
>
> JUROR 3: Well, I'm definitely more cautious back then when I had to ride the bus, yeah.

4

[DEFENSE COUNSEL]: How long ago did this happen?

JUROR 3: It was actually about ten years ago.

[DEFENSE COUNSEL]: Okay. Ten years ago. Do you still ride the bus now?

JUROR 3: No.

[DEFENSE COUNSEL]: Thanks.

(Answer, Ex. E at ¶ 15.)

Furthermore, when the State's counsel questioned the prospective jurors, he asked them if they had a close friend or relative who was a law enforcement officer. Juror number 3 responded that he did. When the State's counsel asked juror number 3 if this would influence him as a juror, juror number 3 responded: "I don't think so."

### III. DISCUSSION

As stated previously, Leflore asserts three claims in his habeas corpus petition: (1) that he was denied his right to an impartial jury; (2) that he was denied effective assistance of counsel due to trial counsel's not removing an alleged bias juror; and (3) that the trial court abused its discretion when sentencing him. In his answer, the respondent asserts that Claim Number One was procedurally defaulted because Leflore did not move to strike juror number 3 for cause. (Answer at ¶ 5.) With respect to Claim Number Two, the respondent asserts in his answer that Leflore is not entitled to relief because

> [t]he decision of the Wisconsin Court of Appeals is not contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, nor was the state court's determination of facts unreasonable in light of the evidence. 28 U.S.C. § 2254(d).

5

(Answer at ¶ 6.) Finally, with respect to Claim Number Three, the respondent asserts that Leflore is not entitled to relief because "[t]he exercise of sentencing discretion is a matter of state law not cognizable in federal habeas corpus. 28 U.S.C. § 2254(a)." (Answer at ¶ 7.)

**A. Federal Habeas Corpus Standards**

An application for a writ of habeas corpus may be granted only on the grounds that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In other words, federal habeas corpus jurisdiction is limited to claims of violations of federal law. *See Brewer v. Aiken*, 935 F.2d 850, 854 (7th Cir. 1991).

Before a federal court may review the merits of a habeas petition, a petitioner must: (1) exhaust all remedies available in state courts and (2) fairly present any federal claims in state court first, or risk procedural default. *See Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001) ("Failure to exhaust available state court remedies constitutes a procedural default."); *see also Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996) (same). "The habeas petitioner must present his federal constitutional claims initially to the state courts in order to give the state 'the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" *McGowan v. Miller*, 109 F.3d 1168, 1172 (7th Cir. 1997) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)) (internal quotations omitted). This means that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Although interrelated, courts have discussed exhaustion of state remedies and procedural default as separate issues.

A petitioner has exhausted his state court remedies "by either (a) providing the highest court in the state a fair opportunity to consider the constitutional issue, or (b) having no further available

6

means for pursuing a review of one's conviction in state court." *Wallace v. Duckworth*, 778 F.2d 1215, 1219 (7th Cir. 1985).

The procedural default hurdle forbids the federal courts from addressing claims that were not fairly presented to the state court. *Jones v. Washington*, 15 F.3d 671, 675 (7th Cir. 1994). Procedural default occurs either when a state court has declined to address a federal claim because the petitioner failed to satisfy an independent state procedural requirement, *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991), or when the petitioner fails to present a claim to the state courts at the time, and in the way, required by the state. *Hogan v. McBride*, 74 F.3d 144, 146 (7th Cir. 1996).

Under the doctrine of procedural default, a federal habeas court will not review defaulted claims unless the petitioner demonstrates either (1) cause for the procedural default and actual prejudice resulting from the alleged violation of federal law, or (2) that failure to consider the claims would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 749-50 (quoting *Murray v. Carrier*, 477 U.S. 478, 495 (1986)). The petitioner bears the burden of establishing that his procedural default is excused by one of these two exceptions. *See McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991).

To satisfy the cause and prejudice standard, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488. The petitioner must also show that the errors of which he complains "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)) (emphasis in original). To demonstrate that a fundamental miscarriage of justice would result from a refusal to consider the defaulted claims, the petitioner is required to show that he is "'actually

7

innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (quoting *Murray*, 477 U.S. at 496). "This standard requires a petitioner to show that it is more likely than not that no reasonable juror would have convicted him." *Rodriguez v. Scillia*, 193 F.3d 913, 917 (7th Cir. 1999).

As previously stated, federal courts may issue a writ of habeas corpus if a petitioner demonstrates that he is "in [state] custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Moffat v. Gilmore*, 113 F.3d 698, 702 (7th Cir. 1997); *see also Del Vecchio v. Illinois Dept. of Corrections*, 31 F.3d 1363, 1370 (7th Cir. 1994) (en banc) ("'[F]ederal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law.'") (quoting *Hass v. Abrahamson*, 910 F.2d 384, 389 (7th Cir. 1990)).

The habeas corpus statute was amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104-132, 100 Stat. 1214, which provides, in pertinent part, that the federal courts may not grant habeas relief under Section 2254 unless the state court's judgment

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A rule is 'clearly established' only if it is compelled by existing Supreme Court precedent." *Henry v. Page*, 223 F.3d 477, 480 (7th Cir. 2000) (quoting *Hogan v. Hanks*, 97 F.3d 189, 192 (7th Cir. 1996)). A state court decision results in an "unreasonable application" of clearly established federal law when that court either (1) "identifies the correct governing legal rule from [Supreme Court precedent] but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new

8

context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000); *see also Harris v. Cotton*, 365 F.3d 552, 555 (7th Cir. 2004). However, a federal habeas court may not grant relief under the "unreasonable application" prong unless the state court's application of Supreme Court precedent "l[ies] well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002). Issues of fact found by a state court are presumed to be correct unless the petitioner rebuts this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Williams v. Parke*, 133 F.3d 971, 973 (7th Cir. 1997).

**B. The Petitioner's Claims**

The petitioner's first claim is that he was denied his right to an impartial jury. The Wisconsin Court of Appeals never addressed the merits of Leflore's juror-bias claim. This is because the court of appeals determined that Leflore had waived such claim by failing to move to strike juror number 3 for cause. Specifically, the court of appeals stated the following with respect to such claim.

> Leflore's first allegation is that he was denied the right to an impartial jury because juror number three was biased. Leflore never moved to strike juror number three during *voir dire*. A claim of juror bias is waived if it is not timely presented to the trial court. *State v. Brunette*, 220 Wis. 2d 431, 442, 583 N.W.2d 174, 179 (Ct. App. 1998). Thus, we will not review Leflore's allegation in the context of a juror-bias claim.

(Answer, Ex. E at ¶ 19.) In other words, relying on the Wisconsin Supreme Court's decision in *State v. Brunette*, *supra*, the court of appeals found that Leflore could not argue that he had been denied an impartial jury because he (more precisely, his trial counsel) had failed to satisfy the independent state procedural requirement of moving to strike the juror for cause in the trial court. As stated previously, procedural default for federal habeas corpus purposes occurs when a state court has declined to address a federal claim because the petitioner failed to satisfy an independent state

9

procedural requirement, *Coleman*, 501 U.S. at 729-30. Given that Leflore's juror bias claim was not heard by the Wisconsin Court of Appeals precisely because he had failed to satisfy the above-described independent state procedural requirement, it follows that such claim has been procedurally defaulted for federal habeas corpus purposes, unless Leflore demonstrates either (1) cause for the procedural default and actual prejudice resulting from the alleged violation of federal law, or (2) that failure to consider the claims would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 749-50. Leflore has made no effort to satisfy either of the above exceptions to the procedural default doctrine. Consequently, this court finds that Leflore has procedurally defaulted his claim of juror bias.

However, Leflore's second habeas claim, to wit, ineffective assistance of counsel, is predicated on his trial counsel's failure to move to strike juror number 3. That particular claim was presented to and considered by the Wisconsin Court of Appeals. Thus, this court must review the Wisconsin court's decision and decide whether that court's judgment on such claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In its decision affirming Leflore's conviction, the Wisconsin Court of Appeals stated the following with respect to the petitioner's ineffective assistance of counsel claim.

> [W]e will not review Leflore's allegation in the context of a juror-bias claim. We can review a juror-bias claim, however, if the defendant alleges ineffective assistance of trial counsel. *Id.*, 220 Wis.2d at 445, 583 N.W.2d at 180. Leflore does so here. Thus, we review his juror-bias argument in the context of his ineffective-assistance-of-counsel claim.

> The familiar two-pronged test for ineffective-assistance-of-counsel claims requires a defendant to prove: (1) deficient performance, and (2) prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficient performance, a defendant must show specific acts or omissions of counsel that are "outside the wide range of professionally competent assistance." *Id*. at 690. There is a "strong presumption that counsel acted reasonably within professional norms." *State v. Johnson*, 153 Wis. 2d 121, 127, 449 N.W.2d 845, 848 (1990).
>
> To prove prejudice, a defendant must show that counsel's errors were so serious that the defendant was deprived of a fair trial and a reliable outcome. *Strickland*, 466 U.S. at 687. In order to succeed, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.
>
> Our standard for reviewing this claim involves a mixed question of law and fact. *Johnson*, 153 Wis. 2d at 127, 449 N.W.2d at 848. Findings of fact will not be disturbed unless clearly erroneous. *Id*. The legal conclusions, however, as to whether counsel's performance was deficient and prejudicial, present a question of law. *Id*., 153 Wis. 2d at 128, 449 N.W. 2d at 848. Finally, we need not address both *Strickland* prongs if the defendant fails to make a sufficient showing on either one. *Strickland*, 466 U.S. at 697.

(Answer, Ex. E. at ¶¶ 9-12.)

The Wisconsin Court of Appeals correctly identified the Supreme Court precedent ("clearly established Federal law, as determined by the Supreme Court of the United States") that was to govern its consideration of Leflore's ineffective assistance of counsel claim, i.e., *Strickland*. Thus, the question that this court must resolve is whether the Wisconsin Court of Appeals either (1) "identifie[d] the correct governing legal rule from [Supreme Court precedent] but unreasonably applie[d] it to the facts of the particular state prisoner's case," or (2) "unreasonably extend[ed] a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuse[d] to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407.

11

The court of appeals decided that Leflore's trial counsel's performance during the jury selection process was not deficient. More particularly, after setting forth the above-referenced questions that were asked of juror number 3 by the court and by defense counsel and his answers thereto, the court of appeals held that it did not find defense counsel's failure to move to strike the juror to constitute deficient performance. The court stated the following.

> A prospective juror need not give unequivocal assurances of his or her ability to remain completely impartial:
>
>> [A] prospective juror need not respond to voir dire questions with unequivocal declarations of impartiality. Indeed, we expect a circuit court to use voir dire to explore a prospective juror's fears, biases, predilections *and fully expect a juror's honest answers at times to be less that unequivocal*.
>
> *State v. Erickson*, 227 Wis. 2d 758, 776, 596 N.W.2d 749, 759 (1999) (emphasis added). In this case, the record shows that Leflore's trial counsel performed exactly as proficient counsel should. He asked juror number three detailed follow-up questions to get more information about the incident and to determine how juror number three was affected by it. At no time during the follow-up questions did juror number three indicate that he would be unable to remain impartial.
>
> Moreover, the bus incident occurred ten years before the trial and the facts of the incident were different from the facts of this case. Accordingly, given juror number three's responses to the follow-up questions and the information known to Leflore's trial counsel at the time of the *voir dire*, Leflore's trial counsel's decision not to move to strike juror number three was reasonable. *See State v. Oswald*, 232 Wis. 2d 62, 95, 606 N.W.2d 207, 223 (Ct. App. 1999) ("Whether defense counsel should move the court to strike a juror for cause is his or her tactical decision to make.") Accordingly, Leflore fails to show deficient performance.

(Answer, Ex. E. at ¶¶ 16-17.)

Interestingly, one of the cases upon which the Wisconsin Court of Appeals relied in rejecting Leflore's argument, *State v. Oswald, supra*, ultimately found its way to the Seventh Circuit Court of Appeals by way of federal habeas corpus. *See Oswald v. Bertrand*, 374 F.3d 475 (7th Cir. 2004).

The Seventh Circuit, affirming the district court, found that the petitioner in that action, Theodore Oswald, was entitled to habeas relief because juror bias had deprived him of his constitutional right to due process.

> The due process clause of the Fourteenth Amendment entitles a state criminal defendant to an impartial jury, which is to say a jury that determines guilt on the basis of the judge's instructions and the evidence introduced at trial, as distinct from preconceptions or other extraneous sources of decision. In addition - and this is critical - due process requires the trial judge, if he becomes aware of a possible source of bias, to "determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial." . . . "[D]ue process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen."

*Oswald*, 374 F.3d at 477-78 (citations omitted). The Seventh Circuit found that the trial judge had been made aware of the fact that during voir dire the jury panel (contrary to the instructions of the judge) had been discussing the case (a most notorious case). Indeed, during voir dire one of the potential jurors, whose last name was Klitzka, said, "I know I've learned more in the last three days here sitting down there in that room about this case than I have since the day it happened . . . . [A]ccording to what I hear, the young man is guilty of what he is being accused of and things like that and everything and I just think it's a waste of time." The judge asked him whether he meant "it's waste to have the trial at all," and the juror confirmed that that was indeed what he meant. *See Oswald*, 374 F.3d at 479.

"Even though the circumstances strongly suggested that the jury had made up its mind that Oswald was guilty, the judge refused either to question [the juror] further or to recall for further questioning any of the prospective jurors who had already been voir dired." *Id.* at 479. The court went on the state the following.

13

During the lunch recess that day the judge had gone to the jury room and reminded the prospective jurors not to discuss the case. On that occasion one of the prospective jurors, William Schuenke, had told the judge: "I really want to talk to you. I had written that letter. It's really important. I don't want to - I'm part of the 29" (who had survived the first stage of the voir dire). In his letter Schuenke had written: "I will more than likely be so concerned about my work that I'd not give in trial all the attention it should receive to the point that I might just vote either way just to end it." Oswald's lawyer, who had seen the letter, wanted to question Schuenke further. The judge refused, though aware that Schuenke's remark to him in the jury room had been heard by the other prospective jurors. The judge knew this because he'd been at the front of the room and Schuenke at the back, with the other jurors in between, yet the judge had heard him, so the jurors must have too. The judge had received notes from three other jurors as well saying they didn't want to serve on the jury. An oral request was relayed to him by a fourth.

When the 29 prospective jurors who had survived the first cut returned to the courtroom, Schuenke had another outburst, saying to the judge in the hearing of the rest of the jury pool, "I asked to speak to you 2 days ago. You mean I can't get five minutes of your time?" The judge told him his request had been addressed, but he replied, "Not to me they weren't you know." Schuenke served on the jury because the defense used up all its seven peremptory challenges on other prospective jurors whom the judge had refused to excuse for cause.

. . . .

The circumstances that we have narrated demonstrate a high probability that some, maybe all, of the jurors who tried Oswald were biased. It is not just what Klitzka said or what Schuenke said; those were merely the most dramatic indications that, as the judge obviously realized, the process of jury selection was being poisoned. The question is whether, given the indications of jury bias, the judge's inquiry was adequate. From the case law we distill the principle that adequacy is a function of the probability of bias; the greater that probability, the more searching the inquiry needed to make reasonably sure that an unbiased jury is impaneled.

*Id.* at 480. In the end, the Seventh Circuit found that Oswald had been deprived of his due process right to an impartial jury because "[t]he bobtailed inquiry that the judge conducted flunked the constitutional test that 'the investigation be reasonably calculated to resolve the doubts raised about the juror's impartiality.'" *Id.* at 481 (citing *Dyer v. Calderon*, 151 F.3d 970, 974-75 (9th Cir. 1998)

14

(en banc)). More to the point, the Seventh Circuit, which was acting in the capacity of a federal habeas corpus court, found that "[t]he state appellate court's condonation of the lack of minimally timely, minimally adequate, investigation was an unreasonable application of *Remmer v. United States* and *Smith v. Phillips* and is therefore subject to correction in this habeas corpus proceeding." *Id.* at 483.

Of course, in *Oswald* the court directly confronted the due process argument. In the instant case, and as previously stated, Leflore's due process claim that he was the victim of juror partiality was procedurally defaulted. Thus, aside from the facts in the instant case being markedly different from the facts in the *Oswald* case, Leflore's constitutional claim in this case is presented only in the form of alleged ineffective assistance of counsel claim. Such being the case, it is the acts (or failures to act) of counsel and not the acts (or failures to act) of the trial judge that are to be evaluated in the instant case.

To reiterate, in order to establish that he was denied the effective assistance of counsel, a defendant must show both that counsel's performance was deficient and that he was prejudiced by his attorney's errors. *Strickland*, 466 U.S. at 687. The Wisconsin Court of Appeals found that trial counsel's performance was not deficient; that the follow-up questions he posed to juror number 3 were entirely appropriate and reasonable in that such questions elicited from the juror "more information about the incident and . . . how [he] was affected by it." (Answer, Ex. E at ¶ 16.) Moreover, as the court of appeals correctly noted, "[a]t no time during the follow-up questions did juror number three indicate that he would be unable to remain impartial." (Answer, Ex. E at ¶ 16.)

To be sure, and as previously noted, juror number 3 acknowledged that he had a close friend or relative who was a law enforcement officer. When asked by the State's counsel if this would

15

influence him as a juror, juror number 3 responded, "I don't think so." However, such an answer does not indicate partiality. Rather, it indicates that the juror is taking seriously the question and giving a thoughtful answer.

Selecting a jury is not a scientifically precise exercise. Instead, it involves the considered judgment of trial counsel. A cold record does not reveal the manner in which a prospective juror answers a question. Nor does it reveal the facial expressions of the prospective juror as he responds to counsel's questions. Indeed, experienced trial counsel know too well that the body language of a prospective juror during voir dire is often as telling as the words that come out of the juror's mouth. "Demeanor plays a fundamental role not only in determining juror credibility, but also in simply understanding what a potential juror is saying." *Patton v. Yount*, 467 U.S. 1025, 1038, n.14 (1984). The Supreme Court in *Patton* made the observation that the testimony of prospective jurors is sometimes ambiguous and contradictory. It then proceeded to state the following:

> This is not unusual on voir dire examination . . . . It is well to remember that the lay persons on the panel may never have been subjected to the type of leading questions and cross-examination tactics that frequently are employed . . . . Prospective jurors represent a cross section of the community, and their education and experience vary widely. Also, unlike witnesses, prospective jurors have had no briefing by lawyers prior to taking the stand. Jurors thus cannot be expected invariably to express themselves carefully or even consistently.

*Patton*, 467 U.S. at 1039.

As the Wisconsin Court of Appeals noted in its decision, "Leflore's trial attorney did in fact ask juror number three follow-up questions about the attack on the bus, and elicited pertinent information about the attack that revealed how that earlier incident might affect the juror's views about the charges against Leflore." (Answer, Ex. E at ¶ 20.) After hearing juror number 3's answers to questions posed to him, trial counsel did not seek to have him stricken for cause. It logically

16

follows that counsel was satisfied that juror number 3 would be impartial. Such being the case, trial counsel's decision not to move to strike juror number 3 for cause should be considered a matter of trial strategy. And, there is a strong presumption that counsel's decision not to move to strike juror number 3 "be considered a *sound* trial strategy." *Strickland*, 466 U.S. at 689 (emphasis added). As the Court in *Strickland* stated,

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.
>
> . . . .
>
> Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

466 U.S. at 690 (citations omitted).

In other words, in order to be granted relief, a habeas petitioner must overcome the presumption of effectiveness that is attendant to trial counsel's performance. In addition, however, a section 2254 habeas petitioner must also demonstrate that the state court's judgment on the question of trial counsel's effectiveness involved an unreasonable application of the holding in *Strickland*., i.e., that the state court unreasonably applied the principles set forth in *Strickland* to the facts of the petitioner's case. And to reiterate, a federal habeas court "may not grant relief under the 'unreasonable application' prong unless the state court's application of Supreme Court precedent 'l[ies] well outside the boundaries of permissible differences of opinion.'" *Burt*, 442 F.3d at 564.

The bottom line is that, in this court's opinion, Leflore has not shown the Wisconsin Court of Appeals' decision, that trial counsel's performance was not deficient, to be an unreasonable application of *Strickland* to the facts of this case. Accordingly, to the extent that Leflore's federal habeas petition is predicated on an ineffective assistance of counsel claim, his petition will be denied.

Finally, in the third claim of his habeas petition Leflore asserts that the trial court abused its discretion when sentencing him. Generally speaking, the exercise of sentencing discretion is a matter of state law not cognizable in federal habeas corpus. Be that as it may, Leflore has not presented any argument in support of his third claim. Such being the case, this court assumes he has abandoned such claim and thus will not address it. *See, e.g.*, *Duncan v. State of Wis. Dept. Health and Family Serv.*, 166 F.3d 930, 934 (7th Cir. 1999) (stating that arguments that a party fails to develop in its brief in any meaningful manner will be deemed waived or abandoned); *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (stating that the failure to brief and argue an issue before the district court is grounds for finding that the issue has been abandoned).

In conclusion, and for all of the foregoing reasons, Leflore's petition for a writ of habeas corpus is denied and this action is dismissed.

**NOW THEREFORE IT IS ORDERED** that petitioner Leflore's petition for writ of habeas corpus be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**SO ORDERED** this   19th   day of January 2006, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge

19